**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **ELECTRONICALLY FILED** |
| **Plaintiff** | ) | |
| | ) | **Civil Action No. 5:05-382-JMH** |
| | ) | **Judge Hood** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **ANSWER AND COUNTERCLAIM/** |
| **MARY ELIZABETH CLAY, et al.** | ) | **CLAIMS FOR RECOUPMENT** |
| **Defendants** | | |

** ** ** ** **

Comes now the Defendant, Mary Elizabeth Clay, by and through counsel, and for her Answer states as follows:

1. Defendant admits the characterization of the type of styled action in paragraph 1, but she denies that the United States of America on behalf of the Department of Agriculture ("USDA"), Farm Service Agency ("FSA"), is entitled to foreclosure.

2. Defendant admits paragraphs 2 and 3 of the Complaint only to the extent that the recorded documents referred to are consistent with the terms as set forth in this paragraph.

3. Defendant admits the first sentence of paragraph 4 of the Complaint only to the extent that the recorded document referred to at Exhibit C is consistent with the terms as set forth in this paragraph. Further, she admits so much of the second sentence that is consistent with the terms as set out in the Assumption Agreement, and denies the remainder of paragraph 4.

4. Defendant admits so much of paragraph 5 that is consistent with the terms of the recorded document at Exhibit D and denies all other allegations that are inconsistent with the 1983 real estate mortgage.

1

5. Defendant admits paragraphs 6 and 7 of the Complaint only to the extent that the recorded documents are consistent with the terms as set forth in this paragraph.

6. The first sentence of paragraph 8 is a legal conclusion and does not contain any allegation against or relating to Defendant, and therefore does not require a response from her. The second sentence of paragraph 8 does not contain any factual allegation against or relating to Defendant, and therefore does not require a response from her. Defendant admits the allegations of the third sentence of paragraph 8 only to the extent that her loan account was accelerated by Plaintiff and denies all other allegations as contained in paragraph 8 of the Complaint.

7. Defendant admits paragraph 9 of the Complaint.

8. Defendant denies the first sentence of paragraph 10. She is without sufficient knowledge to admit or deny the second sentence of paragraph 10, as the Plaintiff has not identified the documents to which it refers. Defendant, therefore denies those allegations. Defendant admits so much of the third sentence of paragraph 10 that is consistent with the terms as set out in said "Security Agreement" but denies all other factual allegations not consistent with that Agreement.

9. Defendant denies the allegations contained in paragraphs 11 and 12 of the Complaint.

10. Defendant admits so much of the first sentence of paragraph 13 of the Complaint that is consistent with the terms as set out in said documents referred to in this paragraph, and Defendant denies the allegations contained in paragraph 13 to the extent inconsistent with those terms. Defendant denies the second sentence of paragraph 13 of the Complaint.

11. Defendant denies paragraphs 14, 15, 16, 17, 18, and 19 of the Complaint.

12. Defendant admits the allegations in paragraph 20 to the extent that American General Home Equity, Inc., extended a first mortgage lien to her, securing the collateral at issue, in reliance on the assurance that the United States of America's lien against the property at issue had been released. Defendant asserts American General released its lien on July 18, 2006 and, therefore, no longer claims an interest in the collateral at issue. Defendant denies the remainder of paragraph 20 of the Complaint.

13. Defendant admits paragraph 21 of the Complaint.

14. Defendant denies paragraph 22 of the Complaint.

## AFFIRMATIVE DEFENSES

15. Plaintiff's claims are barred in whole or part by the doctrines of equitable or promissory estoppel.

16. Plaintiff's claims are barred in whole or part by the doctrine of laches.

## COUNTERCLAIMS/CLAIMS FOR RECOUPMENT

17. That at all times relevant the USDA, acting on behalf of the Plaintiff, originated and administered and/or serviced the mortgage loan the Plaintiff seeks to collect against Defendant in the instant case.

18. Defendant's affirmative defenses, counterclaims and/or claims for recoupment all arise out of the origination and/or administration servicing of Defendant's loan that is the subject of this action.

19. On or about April 26, 1983, Defendant borrowed money from the Plaintiff for the purchase of real property which is the subject of this litigation. The amount borrowed is evidenced by the Assumption Agreement she executed and delivered to the United States of

America, acting through the Farmers Home Administration, United States Department of Agriculture, on or about April 26, 1983. On or about April 26, 1983, Defendant also executed and delivered to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, a real estate mortgage to secure repayment of that loan.

20. Since the execution of the Mortgage, extending over the period of 1983 through 2000, Plaintiff conducted many property valuations or appraisals of Defendant's property that directly affected the extension of credit to Defendant in terms of increasing or decreasing the amount of her loan based on the fair market value of the collateral.

21. At all times relevant to this action, the property valuations or appraisals were conducted by employees of the Plaintiff and/or employees that were under the control and supervision of the Plaintiff. At all times relevant hereto, these employees were acting within the course and scope of their employment with Plaintiff.

22. These valuations vary significantly despite the property's rural location in Harrison County, Kentucky, and the fact that the property was subject to little change during the time period at issue because the farmland is unsuitable as crop land.

23. On or about July 24, 1990, the Defendant and FSA entered into a Shared Appreciation Agreement which provided for a "write down" and restructuring of the Defendant's debt to FSA based on the appraised value of the FSA real estate security. The agreement was to be effective for a ten-year period and would expire as of July 24, 2000.

24. When the loan needed to be in initially collateralized in 1983, the property appraised for $91,500.00, the exact value necessary to cover the entire unpaid principal *plus* the accrued interest of the previous owners who had never made any payments on their USDA

mortgage.  Subsequently, when no loan or administering/servicing activity was at issue, and only four years later, the property value *depreciated by about 100%*, to a value of $50,00.00 and then three years later to $45,500.00.  This appraised value purported to reflect a more accurate market value for the property at issue and was the basis of the 1990 Shared Appreciate Agreement which modified the loan to better reflect the market value thereby reducing the Defendant's principal balance. Under the terms of the Agreement, after ten years the property would be reassessed; and the Defendant would owe Plaintiff additional sums if the property gained any positive appreciation during those ten years.  The terms further implicitly obligated Plaintiff to conduct fair appraisals of Defendant's property in order to properly reflect the value of the collateral.  Again, while no activity on the loan or administration/servicing of the loan was at issue, the property value remained consistent at $45,000.00 for an additional five years, through the last valuation on the property in 1995, before the Shared Appreciation Agreement was to come due in 2000.

25. Subsequently in 2000, when the Plaintiff had the opportunity to collect on its Shared Appreciation Agreement, the Plaintiff commissioned an Appraisal Report and the property *appreciated by about 100%* , back up to $90,000.00.  This appraisal inflated the true fair market value of the property and had the direct effect of increasing the principal balance of Defendant's loan obligation with Plaintiff by $22,500.00, or 50% of the claimed appreciation in accordance with the terms of the Agreement.   By inflating the value, Plaintiff committed a material breach of its obligations under the Shared Appreciation Agreement.

26. Additionally, the Plaintiff  falsely, intentionally and/or negligently misrepresented to Defendant the value of the property at issue by significantly inflating its value in the appraisal

5

described in the preceding paragraph and did so without regard for the actual fair market value. At the time Plaintiff knew or should reasonably have known the appraisals at issue were falsely inflated.

27. These material misrepresentations of the inflated property valuations were knowingly made or made with reckless disregard for the truth by the Plaintiff. These material misrepresentations were made by Plaintiff with the intent and knowledge that Defendant would be induced to rely on them and act upon them by obligating herself to the loan originally and in executing the Shared Appreciation Agreement.

28. At all times relevant, Defendant in fact relied upon the material misrepresentations of the inaccurate property valuations to her detriment in agreeing to originally obligate herself on the debt and in obligating herself to the Shared Appreciation Agreement.

29. By intentionally or recklessly misrepresenting the value of her property and/or by failing to use reasonable care in representing the accurate value of her property, the Plaintiff's valuations and appraisals in question caused Defendant to overpay for her property in the first instance. Subsequently, these misrepresented valuations and appraisals caused Defendant to become unable to afford her loan when the Shared Appreciation Agreement came due, requiring Defendant to amortize an additional $22,500 into the loan principal because of the claimed appreciation.

30. Had the property valuations been conducted fairly and reviewed with reasonable care, Defendant would have never have become indebted originally, or would have not become

indebted for the amounts the government now claims against her and, absent the misrepresentations, would have be able to afford to make all payments due on her home.

31. In 1998, Plaintiff extended further advances to the Defendant in the amount of $12,856.39. This additional amount was secured by the real property at issue and chattels, further decreasing Defendant's equity and increasing her yearly payments by $5,432.00. In 2000, when Plaintiff sought to collect on the Shared Appreciation Agreement, Defendant's total indebtedness as assessed by the Plaintiff equaled approximately $97,187.00 ($62,081.13 remaining from the write-down Agreement in 1990; $12,856.39 additional credit extended in 1998; and $22,500.00 sought from Plaintiff's attempt to collect on the Agreement in 2000) - an amount far exceeding the value of her property and thereby prohibiting her from engaging in any options to preserve her home or her equity (Defendant had paid approximately $51,000.00 on the loan between 1983 and 2000).

32. On or about August 26, 2004 the Plaintiff released its mortgage lien against the property at issue by causing a release to be filed with the Harrison County Clerk's office.

33. At all times, the government employees who caused the release to be filed were acting within the course and scope of their employment with Plaintiff in administering/servicing real estate loans including the responsibility of releasing real estate liens.

34. When its employees agreed to release the lien, the Plaintiff was or reasonably should have been aware that the real estate loan at issue was an FmHA farm loan later transferred to the FSA and not an RD loan and was fully aware of all relevant facts relating to the mortgage at issue before authorizing the filing of the release.

35. The Plaintiff had actual knowledge that the lien release was requested so that Defendant could execute a first mortgage lien with a third party, American General. The Plaintiff also knew that American General's and Defendant's mutual obligation was contingent on American General being the superior first lien holder. Thus, the Plaintiff was aware that its actions in releasing the mortgage would be relied upon by Defendant and American General. In fact, Defendant, to her detriment, and American General both relied on the Release and Plaintiff's representations relating to the Release in entering into a loan agreement on the property at issue.

36. In relying on Plaintiff's representations regarding the Release, Defendant reasonably believed she had paid all she owed on her mortgage and loan agreements with Plaintiff and believed that the lien was lawfully canceled as evidenced by her repeated requests for the Plaintiff to record the release of her lien as she "owed nothing". Defendant reasonably believed the Release was valid and authorized.

37. Defendant relied on the Release in entering into a new mortgage agreement with American General regarding the property at issue. Afterward, when Defendant received her large worker's compensation settlement, and having never been notified of the USDA's position that the Release was invalid, she paid her loan with American General in full. Had Defendant used her settlement to pay the USDA loan at issue there would clearly be no basis for the foreclosure.

38. Instead, Defendant was left in the detrimental position of having used her money to pay the American General loan in full. At the time she paid her loan off with American General, after becoming fully disabled, Defendant only received $643.00 per month from Social

Security and SSI; she was left unable to make payments of her USDA loan in order to prevent foreclosure by the Plaintiff. Because Plaintiff's conduct left Defendant in the position of being 'upside down' on her mortgage, having no equity in her property, Defendant had no means in which to save her home or preserve her equity.

## COUNT ONE

## PROMISSORY/EQUITABLE ESTOPPEL

39. Defendant incorporates all the factual allegations set forth above.

40. Plaintiff's conduct as described above estopps it from foreclosing on its lien and otherwise enforcing the terms of the Assumption Agreement and other notes, and the Shared Appreciation Agreement at issue in this case. This Court should enter a declaration in order to avoid the injustice of enforcing those agreements.

## COUNT TWO

## INTENTIONAL MISREPRESENTATION

41. Defendant incorporates all the factual allegations set forth above.

42. As described above, the Plaintiff's actions were unconscionable, were done with oppression, fraud, knowingly, or with reckless disregard of the truth of the facts described above.

43. As a direct and proximate cause of Plaintiff's conduct as described herein, Defendant has suffered monetary damage, anxiety, mental suffering, and emotional distress, all to her damage in an amount to be determined by the evidence at trial. As a direct and proximate result of Plaintiff's misconduct, Defendant is entitled to an award of damages in the form of recoupment that would offset her obligation which the Plaintiff alleges in its Complaint.

## COUNT THREE

## NEGLIGENT MISREPRESENTATION

44. Defendant incorporates all the factual allegations set forth above.

45. As described above, the Plaintiff's actions were done with lack of reasonable care or competence with regard to obtaining and/or communicating the truth of the facts described above.

46. As a direct and proximate cause of Plaintiff's conduct as described herein, Defendant has suffered monetary damage, anxiety, mental suffering, and emotional distress, all to her damage in an amount to be determined by the evidence at trial.  As a direct and proximate result of Plaintiff's misconduct, Defendant is entitled to an award of damages in the form of recoupment that would offset her obligation which the Plaintiff alleges in its Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Defendant, Mary Elizabeth Clay, requests that this Court:

1. Dismiss Plaintiff's Complaint with prejudice and award costs and fees, including attorney's fees, to Defendant.

2. Award actual and compensatory damages in the form of recoupment to diminish or extinguish Plaintiff's monetary and foreclosure demands.

3. Estopp the Plaintiff from collecting upon its claims and/or allow damages in the form of recoupment to diminish or extinguish Plaintiff's monetary and foreclosure demands.

4. Award such other recoupment or equitable relief based on the evidence proved at trial.

5. Grant any other relief to which the Defendant may be entitled, including reformation of the obligation that is the basis of Plaintiff's claims.

6. Grant all such other and further relief as the Court deems just.

        Respectfully Submitted,

        J. EILEEN ZELL
        GLENDA HARRISON
        LEGAL AID OF THE BLUEGRASS

        By:    s/ J. Eileen Zell
                  J. Eileen Zell (KY 90398)
                  Glenda Harrison (KY 29585)
                  Attorney for Defendant
                  Legal Aid of the Bluegrass
                  302 Greenup Street
                  Covington, Kentucky 41011
                  Ph: 859-431-8200, ext. 1221
                  ezell@lablaw.org

        MICHAEL O'HARA (KY 52530)
        O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
        25 Crestview Hills Mall Road, Suite 201
        PO Box 17411
        Covington, KY 41017-0411
        (859) 331-2000
        Email: mohara@ortlaw.com

## CERTIFICATE OF SERVICE

On March 19, 2008, I electronically filed this document through the ECF system, which will send a notice of electronic filing and any order or judgment the Defendant proposes in connection therewith to:

Cheryl D. Morgan
Cheryl.Morgan@usdoj.gov

        By:    s/ J. Eileen Zell
                  J. Eileen Zell
                  Legal Aid of the Bluegrass