## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 05-382-JMH                         ELECTRONICALLY FILED

UNITED STATES OF AMERICA                                           PLAINTIFF

VS.                    MEMORANDUM OF LAW IN SUPPORT OF
                    MOTION FOR SUMMARY JUDGMENT AND
                    <u>MOTION TO DISMISS COUNTERCLAIM</u>

MARY ELIZABETH CLAY, ET AL                                       DEFENDANTS

* * * * *

### <u>PROCEDURAL BACKGROUND</u>

This case initially began as a simple federal foreclosure case when the Defendant, Mary Elizabeth Clay defaulted on her federal real estate mortgage and chattel liens. After five (5) years of nonpayment on those debts, the United States filed its complaint in foreclosure in this court on September 20, 2005. (R. 1). Although the case proceeded to summary judgment against Defendant Clay[1] (R. 17), that judgment was set aside upon Clay's Motion for Relief under Fed. R. Civ. P. 60(b) on the court's finding that the United States failed to disclose to the Court that there had been a certain release filed of record as to the mortgages in question. (R. 35). Because of that nondisclosure, the Court held it "would not have entered summary judgment in Plaintiff's favor without assessing the validity of the release." (*Id.* at 7).

Upon the reopening of the case, the Defendant filed an Answer and, for the first time, a Counterclaim. (R. 36). In the counterclaim, the Defendant seeks to avoid foreclosure on the debt owed to the United States by asserting that agents/employees of the United States have

---

[1]Initially, there was a second defendant in the case, American General. Default judgment was entered as to that defendant on June 28, 2006. (R. 1). That judgment has not been set aside and is not at issue herein.

committed a host of intentional, reckless and fraudulent acts against her.  Despite the broadly

sweeping allegations and accusations that Defendant makes as to both employees of the United

States and counsel for the government[2],  the authorities below and the declarations attached

hereto clearly establish that the United States is entitled to judgment herein as a matter of law.

## STATEMENT OF THE FACTS

The Farmers Home Administration (FmHA) ceased to exist in 1994 when the Department

of Agriculture was reorganized under the *Department of Agriculture Reorganization Act of 1994*.

Pub. L. No. 103-354; *see also* 7 U.S.C.A. § 6943 *et seq.*  From that restructuring, two new

entities were formed: the Consolidated Farm Service Agency[3] and Rural Development (RD).

The newly formed FSA encompassed the <u>farm</u> credit portion of the FmHA. Today, the FSA

makes and guarantees farm emergency, ownership, and operating loans.  RD was created to

administer the former FmHA's <u>non-farm</u> financial programs for rural housing, community

facilities, water and waste disposal, and rural businesses.  The FSA and the RD are completely

---

[2]Although the Court did reopen the case, and set aside the prior summary judgment upon a finding that prior counsel for the United States failed to disclose a purported "release" of the mortgage in this case, there has not been, nor does defendant suggest that **any** valid release of the debt in this case was ever filed, or intended to be filed by any agency of the government with the authority to do so.  There is no dispute among the parties but that the agency issuing the release was not statutorily authorized to do so.  Defendant's argument is that even if the wrong agency issued the release, the government is bound by that release under Kentucky mortgage statutes.  As shown, *infra,* that position is wholly unsupported in the law. The "releases" on their face are invalid and thus not relevant to the case.

Moreover, there is no dispute to the Declaration of AUSA Davis Sledd (attached hereto as Exhibit A) but that the "releases" and the circumstances thereof were disclosed to not one, but two prior counsel for Ms. Clay, and that the information pertaining thereto was in the record in this case at the time the original summary judgment motion was granted.

[3]Renamed the Farm Service Agency (FSA) in 1995.

2

separate agencies within the United States Department of Agriculture.[4]

On May 12, 1981, Jerry L. and Sherry Northcutt borrowed $80,000 from Farm Service Agency by execution of a promissory note and mortgage, calling for annual payments of principal and interest.  This mortgage granted FSA a first mortgage lien on the property.  (R. 1 at ¶¶ 2 and 3 and Exs. A & B; R. 15, Ott Affidavit at ¶ 3.)  In 1983, Clay assumed the Northcuttt loan, and executed an assumption agreement and a second mortgage.  (R. 1, ¶¶ 4 and 5 and Exs A & B; R. 15, Ott Aff. at ¶ 4.)  She initiated a second loan account with FSA on June 16, 1986 for $109,050.67.  This loan was reamortized on July 24, 1990, and again on February 28, 1998, in the principal amount of $74,937.52.  Each of these three promissory notes called for annual payments of principal and interest.  (R. 1 at ¶ 6 and Ex. E; R. 15, Ott Affidavit at ¶ 5.)  In 1983, an initial appraisal was performed of the subject property for the purpose of Clay's acquisition of said property by assumption of the debt of a prior borrower.  (R. 31, Affidavit of Paul E. Moore, ¶ 2.)  Current sales data was utilized to arrive at this value conclusion, and there is **no** evidence that Clay objected to the value **nor** did she exercise her right to appeal the appraisal.  *Id.*

In 1988, primarily due to tough economic conditions for many farm owners, Congress passed a law which began a servicing program that provided the potential for the "write down" of borrowers' debts.  *Id.* at ¶ 3; *see also* 7 C.F.R. 1951 Subpart S.  As one of the main determining factors as to the amount of debt to be written down was the security value of the borrowers' property, in January of 1990, another appraisal was performed on Clay's property. The market and economic conditions, the need for dwelling maintenance, and the fact that the

_____

[4]See http://www.usda.gov for a complete organizational chart of the Department of Agriculture, including all of its agencies.

appraiser selected a value on the lower end of the indicated value range to assist the property owner resulted in a substantial decrease in the real estate value. *Id.* Clay was notified of and **did not** exercise her right to appeal the appraisal. *Id.*

After this January, 1990 appraisal, on July 24, 1990, Clay and FSA entered into a Shared Appreciation Agreement providing for a "write down" and restructuring of Clay's debt to FSA. (R. 1, ¶¶ 7 & 8; R. 15, Ott Aff. at ¶ 7.) The amount of the write down was $53,267.58, and the agreement was effective for a ten-year period and expired on July 24, 2000. *Id.* As required by the 1988 law allowing for write-downs, any borrower who received such a write-down must be evaluated after ten years to determine what portion, if any, of the write-down may have to be repaid. (R. 31, Aff. of Moore, ¶ 4.) In order to determine this amount, on April 6, 2000, an appraisal was completed of Clay's property. *Id.* A substantial value increase from 1990, but minimal when compared to the 1983 appraisal, was realized; however, Clay had completed **considerable** improvements to the dwelling, and the economic and market conditions had improved since 1990.[5] The April 6, 2000 appraised value[6] was $100,000.00, requiring Clay to pay a recapture amount of $27,500.00. *Id.* Clay requested Reconsideration of this appraised amount, and a technical desk and field review of the appraisal was conducted. *Id.* Based upon this review, the appraisal of Clay's property was revised to $90,000.00. *Id.* On June 20, 2000, Clay was notified of the new shared appreciation due of $22,250.00. *Id.* Once again, after notification of her Administrative Appeal Rights, there is no evidence Clay exercised any of

---

[5]See http://www.ers.usda.gov/publications/agoutlook/dec1996/ao236d2.pdf

[6]See R. 31, Ex. 1, for photos of the Clay property taken at the time of the April 6, 2000 appraisal.

4

those rights.  *Id.*  Ms. Clay received a permanent loan forgiveness of $26,017.58.

In addition, Clay executed a Security Agreement dated February 24, 1998, granting FSA a security interest in certain farm equipment (a wagon, water tank and fertilizer spreader) together with all increases, replacements, substitutions and additions.  (R. 1, ¶ 10; R. 15, Ott Aff. at ¶ 8.)

The mortgages and the security agreement provide that in the event of default by Clay in the performance or discharge of any obligation of the loan, the United States has the right to accelerate the indebtedness and declare the entire amount of all unpaid principal and interest to be immediately due and payable.  As well, the United States is also entitled to bring an action for enforcement of the loan contract between the parties, including foreclosure of the mortgage lien on the real property and the security interest in the chattels.  (R. 1, Ex. B at ¶ 17, Ex. D at ¶ 17 & Ex. G at ¶ IV.B.1.)  Clay's last voluntary payment was made on June 7, 2000.  (R. 15, Ott Aff. at ¶ 8.)

As soon as FSA was cleared to do so,[7] on June 4, 2004, it sent Clay a Notice of Acceleration of her debt to the Farm Service Agency for the amount of the 1998 Promissory Note as well as the 1990 Shared Appreciation Agreement.  After receiving no response, and no payments, the subject Complaint was filed herein.  (R. 1.)  It appears from the record that Clay obtained a $20,000.00 open-ended mortgage from American General Financial Services.  In circumstances not entirely clear, Clay obtained a "Release" of the 1983 mortgage from an

---

[7]FSA was prevented from accelerating Clay's loan until the Office of Civil Rights within the USDA completed an extensive review of an apparent discrimination claim made by Clay.  It was only after the review was completed, and the discrimination claim found to be without merit, that FSA was cleared to proceed with acceleration and ultimately, the foreclosure action against Clay.  Said review was completed in March of 2004.

employee of Rural Development in Harrison County.  Said "release" was filed with the Harrison County Clerk on August 26, 2004.  Upon learning that another agency, without authority, issued a lien release that was void, Farm Service Agency immediately filed a Notice with the Harrison County Clerk's office to put any *innocent third parties* on notice of the invalid and void "release" that had been filed on August 26, 2004.  In any event, American General's mortgage was paid in full by Clay and released on July 28, 2005.  The Complaint in the case at bar was filed on September 20, 2005.

## ARGUMENT

**A.    THE COUNTERCLAIM MUST BE DISMISSED IN ITS ENTIRETY AS BARRED BY THE DISCRETIONARY FUNCTION EXEMPTION OF THE FEDERAL TORT CLAIMS ACT**

To the extent that Defendant is attempting to set forth claims under the counterclaim for tort or misrepresentation in the administration of the Shared Appreciation or "write down" program, those claims are barred by the Discretionary Function Exemption of the Federal Tort Claims Act.  In her Answer and Counterclaim, Defendant asserts a number of legal theories, i.e., estoppel, misrepresentation, etc, all based upon allegations that there was improper, negligent or reckless, intentional mishandling of her loan activity with the United States.  The allegations center upon complaints that the appraisals were allegedly inflated, misrepresented or miscalculated or that the administration or servicing aspects of the loan were reckless and led to her detrimental reliance.  In fact, as Defendant succinctly and unambiguously states in paragraph 18 of her "Counterclaims/Claims for Recoupment", **"Defendant's affirmative defenses, counterclaims and/or claims for recoupment all arise out of the origination and/or administration servicing of Defendant's loan that is the subject of this action."** (R. 36)

6

The United States has not waived its sovereign immunity for acts by an employee or federal agency involving a discretionary function whether or not the discretion be abused. 28 U.S.C. § 2680(a). The administration, origination and servicing of loans by the Farm Services Agency are just such acts. "There is ample judicial precedent that the granting and denying of Operating Loans and Emergency Loans by FmHA [precursor to FSA] are acts that Congress intended to place behind the shield provided by the discretionary exception to the FTCA." *Williamson v. United States Dept. of Agriculture,* 815 F.2d 368 (5th Cir. 1987). Moreover, the "**administration** of a farm loan program necessarily entails broad discretion in the application of objective and subjective factors to individual circumstances." *Matzke v. Block,* 564 F.Supp. 1157, 1166 (D.C. Kan. 1983), *aff'd in part, rev'd in part,* 732 F.2d 799 (10th Cir. 1984) (Emphasis Added).

A review of the statutes and regulations governing this case, 7 U.S.C. § 2001 and 7 C.F.R. § 761 reflect this same type of delegation of discretion. This would include the initial determination of eligibility, and the determination of whether Clay could project a feasible farm plan so that she could even participate in the write down program and not face foreclosure. Discretion would have also been involved such decisions as the granting of further credit to Clay, the selection of appraisers and other servicing of the loan package. Therefore, to the extent that the counterclaim and answer seeks relief based upon **any** of those actions, it is barred by the discretionary function exception and judgment for the United States is proper. 28 U.S.C. § 2680(a).

**B.    COUNT 1 OF THE COUNTERCLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION FOR PROMISSORY ESTOPPEL**

In Count 1 of the Counterclaim, the Defendant seeks to assert that the "conduct" of the

United States "estopps" it from enforcing "the terms of the Assumption Agreement and other notes, and the Shared Appreciation Agreement at issue in this case." The counterclaim asserts that estoppel is necessary to prevent "injustice". (R. 36 at 9). Count 1 is thus styled, "Promissory/Equitable Estoppel."

The defendant relies upon two separate grounds for this estoppel argument: First, that Shared Appreciation Agreement was administered in such a way as to overvalue the property and cause her to be in debt; and second, that the unauthorized "release " of the liens filed by the Rural Development agent harmed her. For the reasons shown *infra,* neither basis is legally sufficient as a matter of law to forestall enforcement of the debt owed to the United States.

### 1. Shared Appreciation Agreement

The factual background surrounding the valuation and appraisal of the property as it relates to the issue of promissory estoppel may be summarized briefly. As stated, supra, in 1988, primarily due to tough economic conditions for many farm owners, Congress passed a law which began a servicing program that provided the potential for the "write down" of borrowers' debts. (R. 31, Aff. of Moore, *¶* 3; *see also* 7 C.F.R. 1951 Subpart S.)[8]

In fact,  on July 24, 1990, Clay and FSA entered into a Shared Appreciation Agreement providing for a "write down" and restructuring of Clay's debt to FSA.  (R. 1, ¶¶ 7 & 8; R. 15, Ott Aff. at ¶ 7.)  The amount of the write down was $53,267.58, and the agreement was effective for a ten-year period, expiring on July 24, 2000. *Id.*   **No interest was charged to**

---

[8]For an explanation of the national significance of the program and Congressional intent to aid farmers in avoiding foreclosure by the "writing down of principal and accumulated interest charges" on FmHA loans, see *Bukaske v. United States Dept. of Agriculture,* 193 F. Supp. 1162, 1165 (D.So. Dakota 2002).

**Ms. Clay during the ten-year write-down period.** (Declaration of Mitch Whittle, ¶ 7, attached hereto as Exhibit B). Had the parties not entered into the this agreement, Clay would have been forced to pay the recovery value of the property at that time by refinancing with a commercial lender. Had she been unable to do so, foreclosure would have resulted. *Id.*

As required by the 1988 law allowing for write-downs, any borrower who received such a write-down must be evaluated after ten years to determine what portion, if any, of the write-down may have to be repaid. (R. 31, Aff. of Moore, ¶ 4.) In order to determine this amount, on April 6, 2000, an appraisal was completed of Clay's property. *Id.* This appraisal resulted in a substantial increase to $100,000 from the 1990 amount of $53,267.58, but minimal when compared to the 1983 appraisal of $91,500. By that time, Clay had completed **considerable** improvements to the dwelling, and the economic and market conditions had improved since 1990.[9]

The April 6, 2000 appraised value was $100,000.00, requiring Clay to pay a recapture amount of $27,500.00. *Id.* Clay requested Reconsideration of this appraised amount, and a technical desk and field review of the appraisal was conducted. *Id.* Based upon this review, the appraisal of Clay's property was revised to $90,000.00. *Id.* On June 20, 2000, Clay was notified of the new recapture amount due of $22,250.00. *Id.* Once again, after notification of her Administrative Appeal Rights, there is no evidence Clay exercised any of those rights. *Id.* Clay received an overall debt forgiveness of $26,017.58. (Ex. B, ¶ 7.)

In this case, Defendant argues that the property valuation by the government was so

---

[9]See http://www.ers.usda.gov/publications/agoutlook/dec1996/ao236d2.pdf

recklessly or intentionally erroneous as to have misled her to her detriment –despite the fact that the record clearly shows the shared appreciation agreement and the valuations put the Defendant in a **better** position financially.  In fact, Clay had an **overall net savings** of $26,017.58 by virtue of the shared appreciation agreement as well as ten years of interest free loans.  (Ex. B, ¶ 7.)  Such a benefit will not support a finding of estoppel.  As the Sixth Circuit found in *Estate of James v. USDA,* 404 F.3d 989 (6th Cir. 2005), a case where an identical claim was resolved in favor of the United States:

> The Farmers also failed to show another necessary element of an estoppel claim against the government, namely that the person invoking the doctrine reasonably relied on the misrepresentation to his detriment. [Internal citations omitted]. The Farmers do not contend that had it not been for the local officials' statements, they would not have entered into the debt write-down program and the shared appreciation arrangements. In fact, those arrangements substantially benefitted the Farmers and put them in a better position than they otherwise would have achieved. Not only did they avoid what appeared to be an imminent foreclosure of the mortgages on their farms, but they also received what amounted to ten-year interest-free government loans and gained at least half of the increase in market value of the farm land that occurred during the ten-year agreement terms.

The party asserting estoppel against the United States bears the burden of proof. *Michigan Express Inc. v. United States,* 374 F.3d 424 (6th Cir. 2004).  The Defendant in this case cannot carry this burden because the appraisals and Shared Appreciation Agreement simply do not support a finding of promissory estoppel as a matter of law.  Accordingly, the United States is entitled to judgment on that count.

### 2. "Release" issued by Rural Development

Defendant also seeks to set forth another claim of promissory estoppel as it pertains to an erroneous document styled "Release" issued by Rural Development.  Plaintiff is similarly entitled to judgment as a matter of law.

10

On August 26, 2004, Clay obtained a "Release" of the 1983 mortgage from an employee of Rural Development in Harrison County. As is shown by the declaration of Assistant United States Attorney Davis H. Sledd (attached hereto as Exhibit A), Rural Development, a **separate agency of the government,** was not authorized to release FSA loans.[10] According to the Declaration of Mitch Whittle (attached hereto as Exhibit C), while it is unclear why the employee of Rural Development issued the "release", no authorization to do so was given to that office by FSA.

Unfortunately, this "release" was filed with the Harrison County Clerk on August 26, 2004. Upon learning that another agency, without authority, issued a void lien release, FSA immediately filed a Notice with the Harrison County Clerk's office to put any *innocent third parties* on notice of the invalid and void "release" that had been filed on August 26, 2004.

---

[10]It is blackletter law that an employee of the United States may not bind the sovereign. Clearly, an employee of a **different** agency may not bind the United States by an act totally outside the scope of his employment. *United States v. Jones and Laughlin Steel Corp.*, 804 F. 2d 348 (6th Cir. 1986) (EPA representative may not bind the Justice Department). See *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 383, (1947); *Taylor v. Perini*, 503 F.2d 899, 901-02 (6th Cir. 1974), Vacated on other grounds, 421 U.S. 982 (1974); *Cleveland Trust Co. v. United States*, 421 F.2d 475, 482 (6th Cir.), Cert. denied, 400 U.S. 819 (1970).

Although at one point the Defendant apparently took the position that the release was valid under Kentucky law in and of itself, (R. 34 at 5-6), that does not appear to be the theory of the Counterclaim. Indeed, such a position is clearly without merit based upon the case law cited above. Federal law, not Kentucky law, controls in such a case. As the Court expressly stated in the *Merrill* decision, *supra*:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. [Internal citations omitted].

11

(Exhibit C.)  Clay argues that the void "release" somehow creates an estoppel against the government's ability to collect a valid debt.  It is apparently Defendant's theory that she thought she paid the government debt enough, so she borrowed more money from another entity, and paid that lien in full rather than the government - and now, she somehow should be excused from the government at all. (R. 36, ¶¶ 33-38.)

As noted *supra,* however, there must be **affirmative or intentional** misconduct before promissory estoppel will lie against the government.  *Estate of James v. United States Dept. of Agriculture, supra.*  The mere giving of erroneous information is not sufficient. *Id.*  In the *Estate of James* case, where Department of Agriculture officials erroneously told the farmers that if they operated their farms for ten years they would not have to share the appreciation, the Court found that error insufficient to support estoppel against the government.  Because there are no facts alleged in the counterclaim to establish intentional misconduct in the filing of this erroneous "release" and in light of the declarations Mitch Whittle and AUSA Sledd, attached hereto, summary judgment is appropriate on this issue as well. *Michigan Express, Inc, v. United States, supra.*

## C.    COUNTS II AND III  OF THE COUNTERCLAIM MUST BE DISMISSED AS THE COURT LACKS SUBJECT MATTER JURISDICTION OVER SAID CLAIMS.

The law is clear that the Federal Tort Claims Act is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies and/or employees acting within the scope of their office or employment.  28 U.S.C.A. § 2679.  The federal government's consent to suit is a prerequisite to jurisdiction, and the terms of that consent define a federal court's jurisdiction to entertain such suit.  *United States v. Mitchell*, 463 U.S.

206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The movant bears the burden of establishing a sovereign immunity waiver for a claim against the United States. *Makarova v. United States*, 201 F.3d 110, 113 (2nd Cir. 2000); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

Counts II and III of Defendant's Counterclaim are for "intentional misrepresentation" and "negligent misrepresentation," clearly tort claims falling under the purview of the Federal Tort Claims Act. *See, e.g., United States v. Neustadt*, 366 U.S. 696 (1961). Under Section 2675(a) of Title 28, United States Code, Defendant must exhaust her administrative remedies by presenting her claims to the appropriate federal agency and having them denied prior to bringing them before this Court for any type of adjudication. *See, e.g., Garrett v. United States*, 640 F.2d 24, 25 (6th Cir. 1981); *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974). However, the requirement of administrative exhaustion does not apply to a tort claim brought by way of a compulsory counterclaim. 28 U.S.C.A. § 2675(a); *Spawr v. United States*, 796 F.2d 279 (9th Cir. 1986). In the case at bar, Counts II and III of Defendant's Counterclaim request recoupment. Many courts have examined "recoupment," and a fair reading of the great majority of the opinions indicates that the law provides for a limited waiver of sovereign immunity if the Defendant has presented a <u>proper claim</u> in recoupment. *See, e.g., Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967). In the instant case, Defendant has simply failed to set forth the elements of a claim for recoupment, and as such, the United States has not waived its sovereign immunity as to Counts II and III of Defendant's Counterclaim.

Defendant's counterclaims do not meet the requirements of a "proper" recoupment claim as they are described in many different jurisdictions. The general accepted "first

13

question" in making the determination of whether a proper recoupment claim has been submitted is  whether defendant's counterclaims "aris[e] out of the same transaction or occurrence which is the subject matter of the government's suit."  *Id.* at 488.  The next requirement is that the recoupment claim must involve relief of the same kind and nature as that sought by the government.  *Id.*; *see United States v. Amtreco, Inc.*, 790 F. Supp. 1576 (M.D. GA 1992).   The final requirement is that the claim cannot exceed the amount of the government's claim.  *Id.*  Applying the above criteria to this case leads to the conclusion that the Defendant's counterclaims are not proper recoupment claims.

First, Defendant Clay's counterclaims plainly do not arise out of the "same transaction or occurrence" as the Plaintiff's foreclosure suit.  Many courts have discussed this issue, and developed a number of tests to assist in answering this question.  "(1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? (4) Is there any logical relation between the claim and counterclaim?"  *United States v. Isenberg*, 110 F.R.D. 387, 391 (D.Conn. 1986)(quoting *C. Wright & A. Miller, Federal Practice and Procedure*, § 1410 (1971)).

In the case at bar, the transaction that is at the heart of the Plaintiff's complaint is an action to foreclose on a property in which payments ceased to be made in June, 2000.  The action brought by the government is based upon notes and mortgages guaranteed by the Government under federal housing laws.  The Government would be required to establish the essential elements of its foreclosure action.  *United States v. Longo*, 464 F.2d 913 (8th Cir.

14

1972).  However, Defendant's counterclaims involve alleged misrepresentation surrounding appraisals done on the property at issue, which were written at various times over the past 25 years.  Defendant's potential proof regarding her counterclaims about the appraisals would be markedly different than Plaintiff's proof on its direct claims.  Thus, the evidence to be presented by both parties would be quite dissimilar.

Secondly, Defendant's counterclaims will raise different factual and legal issues, particularly given the basic premise that "there is no legal relationship between the FHA and the individual mortgagor."  *United States v. Neustadt*, 366 U.S. 696, 709 (1961).  There is simply no logical relationship between the foreclosure action brought by the United States, and Count II and III of Defendant's counterclaims for negligent and intentional misrepresentation.  Defendant's counterclaims do not arise out of the "same transaction or occurrence" as the Plaintiff's claims.  Therefore, Defendant's counterclaims under Counts II and III are neither compulsory nor proper recoupment claims, and must be dismissed as barred by sovereign immunity as set forth herein.

**D.    EVEN IF THIS COURT WERE TO DETERMINE THAT IT HAD SUBJECT MATTER JURISDICTION OVER COUNTS II AND III, SAID COUNTS MUST BE DISMISSED AS DEFENDANT HAS NOT STATED A CLAIM UNDER WHICH RELIEF MAY BE GRANTED.**

Assuming, *arguendo*, that a proper recoupment has been stated so as to grant subject matter jurisdiction herein as to Counts II and II of Defendant's Counterclaim, dismissal is still warranted upon the basis that Defendant has failed to state a claim upon which relief may be granted.  In essence, as indicated herein, Defendant's claims in these two counts are for negligent and/or intentional misrepresentation as to appraisals performed by either employees and/or contractors of the United States Department of Agriculture at some point in time.

15

However, it is well-settled that there is no cognizable claim against the Government for misrepresentations regarding Government appraisals as alleged in Defendant's Counterclaim. The Supreme Court has stated that it was "repeatedly emphasized" in Congress "that the primary and predominant objective of the appraisal system was the 'protection of the Government and its insurance funds....' *United States v. Neustadt*, 366 U.S. 696, 709 (1961) (internal citations omitted). Furthermore, the Court held that "**[n]ever once was it even intimated that, in any sense, by an FHA appraisal, the Government would, in any sense, represent or guarantee to the purchaser that he was receiving a certain value for his money**." *Id.*, emphasis added. The Court went on to note:

> That Congress did not thereby intend to convert the FHA appraisal to the purchaser any actionable right of redress against the Government in the event of a faulty appraisal, was made irrefutably clear in the Committee Hearings in both Houses of Congress....

*Id.* at 710. As the Court indicates, the relevant statute "goes no further than to require that a seller of property approved for FHA mortgage insurance shall furnish to the buyer, prior to sale, a written statement disclosing the FHA-appraised value." *Id.* at 709. (Internal footnotes omitted).

Defendant acquired the subject property in 1983, and an appraisal was completed at that time for the protection of the Government funds borrowed by the Defendant. The 1983 appraisal was not grieved in any manner by the Defendant. In 1990, another appraisal was done on the property, and again, Defendant did not complain about the appraised amount. In 2000, a third appraisal was completed on the property, and after one complaint, a follow-up appraisal was completed. Still, no further grievances were filed by Defendant, even after she was notified of her rights to do so. There is plainly no evidence of any duty of the United States to

16

Defendant with regard to these appraisals, and no evidence of any misrepresentations (negligent, intentional or otherwise) regardless.  As such, Defendant fails to state a claim upon which relief may be granted as to Counts II and III of her Counterclaim herein, and same should be dismissed.

**E.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSE OF LACHES RAISED IN DEFENDANT'S ANSWER**

Finally, Defendant has raised the defense of laches against the Government, and requests injunctive relief against the Government in her Answer and Counterclaim.  The assertion of laches is made as an affirmative defense by Defendant under the mistaken theory that the United States' foreclosure should be barred due to some delay in the foreclosure action. Even assuming, *arguendo,* that there was a delay not caused by Defendant's own actions, which is denied, laches would not be a defense herein.  The Supreme Court has unambiguously determined that the United States is not subject to the defense of laches.  *United States v. Summerlin*, 310 U.S. 414 (1940); *United States v. Pall Corp.*, 367 F.Supp. 976 (E.D.N.Y. 1973).  Thus, the "defense" raised is no defense, and the United States is entitled to judgment on this issue.

**F.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON ITS COMPLAINT IN ACCORDANCE WITH ITS PRIOR MEMORANDUM OF LAW WHICH IS INCORPORATED BY REFERENCE HEREIN**

The United States is entitled to summary judgment on the original complaint filed herein for the reasons stated in its original Motion for Summary Judgment filed on May 17, 2006. (R. 15.) That Motion, Memorandum and supporting documentation is hereby incorporated by reference and adopted herein as if fully reinstated herein.

## **CONCLUSION**

For all the foregoing reasons, it is respectfully submitted that the United States be

granted summary judgment on the complaint herein, and that the counterclaim be dismissed .

Respectfully submitted,

JAMES A. ZERHUSEN
United States Attorney


By:     s/ Marianna Jackson-Clay
        MARIANNA JACKSON-CLAY
        CHERYL D. MORGAN
        Assistant United States Attorneys
        United States Attorney's Office
        Eastern District of Kentucky
        260 West Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        Phone: (859) 685-4820
        Phone: (859) 685-4870
        Email: marianna.clay@usdoj.gov
        Email: cheryl.morgan@usdoj.gov

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2009, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

J. Eileen Zell, Esq.
ezell@lablaw.org

Glenda Harrison, Esq.
gharrison@lablaw.org

Michael J. O'Hara, Esq.
mohara@ortlaw.com

s/ Marianna Jackson-Clay
Assistant United States Attorney
