DECLARANT

I, Mitchell W. Whittle, declare as follows:

1. I am currently employed by the Farm Service Agency as the Farm Loan Program Chief, located in the Kentucky Farm Service Agency's State Office.

2. I have been employed with FmHA and now FSA for the past 34 plus years. I started my employment as a Student Trainee on June 23, 1974 in the FmHA County Office located in Jamestown, Kentucky. I came to the FmHA State Office in 1983 as a Farm Loan Specialist. I became the Farm Loan Program Chief in 2007.

3. I have personal knowledge of the facts stated in this declaration. with regard to the 1990 FSA Primary Loan Servicing of Mary Clay's account and its subsequent effects.

4. The FSA debt at the time Mary Clay's account was serviced through our Primary Loan Servicing program in 1990 was $115,862.08. We wrote off $53,267.58, leaving a debt balance of $62,594.50. We set up a new payment schedule, per the write-down, of $1259.00/year for 5 years and then $4552.00 for each of the remaining 27 years. The interest rate was 5%. We were able to project a feasible farm plan (cash flow) through writing down this amount of the FSA debt.

5. If we had been unable to project a feasible cash flow for Ms. Clay at the time of the write-down she would have been forced to pay the net recovery value of the property, $37,600.00, which was based on the appraisal of $45,500.00. If she had been unable to refinance this amount, at a higher interest rate through a commercial lender, we would have been forced to foreclose in 1990. Since we were able to continue with the debt based on the write-down, this was not an option to Ms. Clay. Rather, she was given a smaller debt, a very favorable interest rate, maximum loan terms and the ability to maintain ownership of her property.

6. We had the property appraised again in 2000 and the market value then was set at $100,000.00. The ten years since the write-down was a period in which smaller properties with residences were in great demand and accordingly showed large increases in their value. We calculated the shared appreciation, per the Shared Appreciation Agreement dated July 24, 1990 ( attached ), by subtracting the 1990 appraised value of $45,500.00 from the 2000 appraisal of $100,000.00 to come up with a value appreciation of $54,500.00.

As a maximum, per the Shared Appreciation Agreement, we could only collect 50% of any value appreciation for the 10 year period, thus setting the appreciation she was liable to repay at $27,250.00. This amount was 51.16% of the amount of the debt written off in 2000, thus she was not required to pay back any of the other 48.84% of the debt we wrote off.

7. Further, as another advantage to Ms. Clay, no interest is charged on Shared Appreciation for the ten years following the write-down of debt.

In summary, FSA initially wrote off $53,267.58 of Ms. Clay's debt, as specified herein. Ms. Clay was subsequently required to pay back $27,250.00 per the Shared Appreciation Agreement. Thus Ms. Clay had an overall savings of $26,017.58. In addition, Ms. Clay was not required to pay interest on the either the writedown or recapture amount for the ten year term of the Shared Appreciation Agreement. Furthermore, Ms. Clay was able to maintain ownership of the property versus an immediate liquidation in 1990.

I declare, certify and state under penalty of perjury that the forgoing is true and correct. Executed on this the _18th_ day of _February_, 2009.

Mitchell W. Whittle, Chief

Farm Loan Programs

Farm Service Agency